UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE : BRITTNEY RENNAKER

CASE NO. 1:17-MC-55

HON. ROBERT J. JONKER

_____/

**MEMORANDUM OPINION ON CIVIL AND CRIMINAL CONTEMPT**

Juror service, whether on a petit or grand jury, is both an obligation and an opportunity. It is an obligation in the sense that all citizens called to serve must interrupt their normal lives for a time, go to court, and fill a vital role in the justice system. But it is also an opportunity to continue a tradition of democratic input from citizens to their government and, for those summoned, an opportunity to learn more about that government. In the Spring of 2017, this burden and privilege fell on Ms. Brittney Rennaker when she was called to serve as a grand juror in this district. Ms. Rennaker failed to participate in the process, however, and in doing so has persisted in deliberately violating several court orders. Therefore, for the reasons detailed below, Ms. Rennaker is in both civil and criminal contempt of court and will be imprisoned for a period of thirty days for such conduct.

**I.  FACTS**

*A.  First Show Cause Order*

Ms. Rennaker was selected to serve on Grand Jury 17-2 in February 2017. She appeared for the first session of the grand jury in March of that year but not thereafter. When contacted by the Court's jury administrator after missing these sessions Ms. Rennaker offered several excuses for her absences, including having been mistaken about the dates the grand jury was to meet, and needing to care for a sick child. Then, when Ms. Rennaker failed to appear for yet another session,

Ms. Rennaker simply stopped responding to inquiries from the Court. Accordingly, the Court issued its First Show Cause Order that required Ms. Rennaker to appear in open court to explain her absences from the Grand Jury. (ECF No. 1). Ms. Rennaker then appeared at the July 10, 2017, Show Cause hearing where she explained that she was confused about the Grand Jury's schedule. The Court subsequently ordered Ms. Rennaker to appear for all future scheduled Grand Jury 17-2 sessions and gave her a schedule of those sessions to prevent any further confusion. The Court's order also stated that Ms. Rennaker would only be permitted to be absent from a session with the advanced written permission of the Court's authorized representative. (ECF No. 4). The Court warned Ms. Rennaker that her failure to abide by the terms of the Order could lead the Court to find her in contempt of court with sanctions that could include imprisonment. (*Id.*).

  B.  *Second Show Cause Order*

After the July 10th hearing, Ms. Rennaker attended some Grand Jury 17-2 sessions, but then was absent from multiple Grand Jury 17-2 sessions in September and October of 2017. Ms. Rennaker did not receive advanced written permission to be excused from those sessions. The foreperson of the Grand Jury also requested that Ms. Rennaker be excused from the Grand Jury so that a more reliable alternate juror could be substituted. The Court issued a Second Show Cause Order to Ms. Rennaker on October 4, 2017. (ECF No. 5). The Order required Ms. Rennaker to again appear personally in open court to explain why she should not be found in contempt of court and sanctioned for missing Grand Jury 17-2 sessions without advanced written permission. (ECF No. 5). The Court also granted the request that Ms. Rennaker be relieved of her service as a grand juror, and directed that an alternate be summoned.

Ms. Rennaker appeared at the Second Show Cause hearing on November 7, 2017. After hearing from Ms. Rennaker the Court was satisfied that civil contempt sanctions were warranted, but gave Ms. Rennaker an opportunity to avoid imprisonment. Specifically, the Court structured a community service protocol to substitute for the Grand Jury service that Ms. Rennaker would have otherwise provided. Ms. Rennaker was ordered to serve a total of 90 hours of community service by July 31, 2018, which amounted to five hours for each of the 18 days the Court understood remained on the Grand Jury's schedule.[1] (ECF No. 7). Ms. Rennaker was required to report to the Probation Office closest to her home to satisfy this sanction.

The Court's Order also explained that Ms. Rennaker owed the time she was obligated to serve on the Grand Jury, either on community service, or in custody, as she chose. *Cf. In re Schramm*, 432 F. Supp. 2d 711 (E.D. Mich. 2006). Thus for every five hours of service Ms. Rennaker failed to complete by July 31, 2018, she would be required to serve one day in the custody of the United States Marshals. (*Id.*).

C. *Third Show Cause Order*

Initially, it appeared that Ms. Rennaker was fulfilling her community service obligations. The probation officer received reports from Ms. Rennaker that she was performing community service at the Battle Creek Friends Church. She gave the probation officer a name (Alicia) and a phone number to verify her service. Ms. Rennaker reported performing 12 hours of service in November and another 15 in December and January. The probation officer confirmed these hours with "Alicia" at the number Ms. Rennaker provided.

---

[1] The Court was later advised the Grand Jury actually had 20 days remaining on its schedule.

In February 2018, Ms. Rennaker did not report to the probation officer as scheduled. When the officer contacted Ms. Rennaker by phone for an explanation Ms. Rennaker told the officer that she was sick with the flu, but that she had worked another seven or nine hours since her last report. Ms. Rennaker promised to fax documents to the officer that would confirm this work, but Ms. Rennaker did not do so. When the probation officer contacted Ms. Rennaker again, Ms. Rennaker failed to respond. In fact, Ms. Rennaker failed to respond to five separate follow up calls from the officer on four separate days and, at least once, the phone was answered but then was hung up after the officer identified herself. The probation officer next decided to contact "Alicia" but discovered the number was disconnected. The officer then found the Battle Creek Friends Church number in a public directory, and learned from the church's HR director that there was no "Alicia" at the church, and furthermore that there was no Brittney Rennaker who was performing community service at or for the church.

The Court issued a Third Show Cause Order on March 5, 2018. (ECF No. 10). In the Order, the Court set out the information relayed from the probation officer and indicated that the most natural conclusion from these facts was that Ms. Rennaker had lied to the probation officer and was not complying with the community service alternative to custody. The Court's Show Cause Order stated that, if true, this conduct exposed Ms. Rennaker to criminal liability, whether by criminal contempt or otherwise, with the possibility of punitive imprisonment. Because of the criminal exposure, the Court appointed Ms. Rennaker counsel for the show cause hearing.

Ms. Rennaker's appointed counsel requested a continuance, and the Show Cause hearing was adjourned until April 13, 2018. At that hearing, Ms. Rennaker appeared with her appointed counsel and admitted under oath that she had not performed any community service. Ms. Rennaker testified

she panicked after the Second Show Cause hearing and that she followed some "bad advice" from her friend Alicia. Namely, Ms. Rennaker stated that Alicia told her to provide the probation officer with Alicia's name, and that Alicia would tell the officer that Ms. Rennaker was working at the Battle Creek Friends Church. Ms. Rennaker would then provide false information to the probation officer that Alicia would "vouch" for. Ms. Rennaker admitted that, despite her initial panic, she willfully chose not to follow the Court's orders.

After hearing from both Ms. Rennaker, her counsel, and counsel for the government, the Court found Ms. Rennaker was in both civil and criminal contempt. This opinion details the Court's reasoning.

## II. LEGAL STANDARDS

### A. Civil Contempt

It is a basic proposition of law that parties must comply promptly with all orders and judgments of courts. *See Maness v. Meyers*, 419 U.S. 449, 458 (1995). Failure to do so may lead to contempt citation and sanctions. A contempt finding is appropriate where a party shows by clear and convincing evidence that the litigant violated "'a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Nat'l Labor Relations Bd. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (internal quotations omitted). Any sanction imposed for a civil contempt must have as its goal coercing compliance with the Court's orders or compensating for losses sustained because of the contempt, and not punishment for wrongdoing. *See Glover v. Johnson*, 199 F.3d 310, 313 (6th Cir. 1999) (*citing TWM Manufacturing Co. v. Duna Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983)).

In *International Union, United Mine Workers of America v. Bagwell*, the Supreme Court stated that, "[t]he paradigmatic coercive, civil contempt sanction, as set forTH in *Gompers* [*v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1991)], involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" 512 U.S. 821, 828 (1994). The *Bagwell* Court went on to cite several Supreme Court cases upholding imprisonment for civil contempt for either an indefinite term or a lengthy, fixed term. *See, e.g.*, *Gompers*, 221 U.S. at 442 (recognizing that indefinite detention is not unlawful because the contemnor "carries the keys of his prison in his own pocket" and can "end the sentence and discharge himself at any moment by doing what he had previously refused to do").

In the context of grand or petit jurors who refuse to serve, the Court has found instructive the case of *In re Schramm*, 432 F. Supp. 2d 711 (E.D. Mich. 2006), which required a recalcitrant grand juror to sit in the court's hallway when the grand jury was in session. *See also In re Freed*, 960 F. Supp. 2d 716 (W.D. Mich. 2013) (requiring recalcitrant petit juror to sit in the courtroom while the petit jury completed their services). The Court sees these situations as most analogous to civil contempt as long as any incarceration or other restraint on liberty is tied to and limited by the time period the juror would otherwise have served as a juror. Their selection as jurors defined the extent of the court's lawful claim on their time, and their own conduct as recalcitrant jurors determined whether they spent the time in a regular jury room or a jail (or a community service alternative).

B.  Criminal Contempt

The power of federal courts to punish for criminal contempt is limited by statute and is outlined in 18 U.S.C. § 401:

6

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as--
>
>> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>>
>> (2) Misbehavior of any of its officers in their official transactions;
>>
>> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

*Id.* Here, § 401(3) applies, and requires a showing beyond reasonable doubt that the contemnor (1) had notice of a reasonably specific court order, (2) disobeyed it, and (3) acted with intent or willfulness in doing so. *United States v. Hendrickson*, 822 F.3d 812, 820 (6th Cir. 2016) (citing *United States v. Bibbins*, 3 F. App'x 251, 253 (6th Cir. 2001) (per curiam)).

In general, the law recognizes two types of criminal contempt and the procedure for both is prescribed by Rule. Contempt committed in the presence of the court is known as direct contempt, and contempt outside the presence of the court is known as indirect or constructive contempt. 3A CHARLES ALAN WRIGHT & SARAH N. WELLING, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 705 (4th ed. 2010). Direct contempt proceeds through the summary process of FED R. CRIM. P. 42(b). The summary process is reserved for those exceptional circumstances where the contempt takes place in front of the judicial officer. Most often, criminal contempt is prosecuted under the terms of Rule 42(a) which outlines a prosecution-on-notice mechanism. Specifically:

> Rule 42(a) sets forth three basic requirements: adequate notice; the appointment of a prosecutor; and trial and disposition. The notice may be provided in one of three ways: in open court, in an order to show cause, or in an arrest order. Fed. R. Crim. P. 42(a)(1). It must (1) inform the accused person of the time and place of the trial, (2) allow him or her a reasonable time to prepare a defense, and

7

> (3) state the essential facts constituting the criminal contempt. Fed. R. Crim. P. 42(a)(1)(A)-(C).

*In re Troutt*, 460 F.3d 887, 894 (7th Cir. 2006).

Contemnors in indirect cases have a constitutional right to have their defense heard, the assistance of counsel, and the right to produce evidence. WRIGHT & WELLING at § 710. The full panoply of criminal law rights, including trial by jury, is constitutionally required if the sentence for criminal contempt exceeds six months. *See Bloom v. State of Ill.*, 391 U.S. 194 (1968). As long as the criminal contempt sentence is a petty offense of six months or less, a jury trial is not required. *Id.* The sentence actually imposed is the determinative factor. WRIGHT & WELLING at § 711.

## III. ANALYSIS

Ms. Rennaker has failed to comply with several of the Court's previous orders. (*See* ECF Nos. 4 & 7). Moreover, Ms. Rennaker admitted that she willfully chose not to do so. On these facts, Ms. Rennaker is unquestionably in contempt of court. She has made no effort to properly comply with the latest of those orders, which gave her a community service alternative to custody. In fact, she flouted the Order by telling the probation officer that she was complying with it when she was in fact not doing so. Unfortunately, the Court has no choice but to escalate sanctions in response to Ms. Rennaker's worsening conduct. After considering the record and the ineffectiveness of previously attempted remedies, the Court concludes the best way to secure compliance with its previous orders is to order that Ms. Renneker be turned over to the custody of the United States Marshals for a total term of thirty days. This represents the original eighteen days for civil contempt that she failed to purge by fulfilling her community service, plus an additional twelve days for the criminal contempt of willfully flouting the Court's Order.

In regards to Ms. Rennaker's civil contempt, the Court has stated all along that Ms. Rennaker's selection as a grand juror obligated her to the Court for the scheduled term of service. This service could be completed in one of three ways, and Ms. Rennaker held the "keys" to each "door." First of all, Ms. Rennaker could have fulfilled the term by attending the Grand Jury sessions as initially ordered. This was the door that the Court, the Government, and most likely Ms. Rennaker herself would have preferred she step through. But Ms. Rennaker locked this door and threw away the key when she failed to attend the Grand Jury sessions, even after being given a second chance by the Court. Ms. Rennaker also locked the second door to community service when she deliberately chose not to engage in the process the Court structured after the Second Show Cause hearing. There remains only one door for Ms. Rennaker to enter that will satisfy the term of service, and she chose that door for herself. Thus the Court views this portion of the term of custody as coercive, rather than punitive, even though Ms. Rennaker has limited the choices she has down to one.[2]

It is also necessary to impose a punitive sanction for Ms. Rennaker's deliberate and willful choice to disregard the Court's November 2017 Order. There is a dearth of case law on criminal contempt sanctions for grand jurors. This is likely due to the fact that, in the Court's experience, the vast majority of citizens routinely fulfill their civic duty of jury service, when called upon to do so, even when the service is difficult or inconvenient. And the Sentencing Guidelines merely note that criminal contempt is highly context-dependent, and so there is not a specific guideline. U.S.S.G.

---

[2] The Court recognizes that whether Ms. Rennaker's contempt is now entirely criminal is a close question. *See* WRIGHT & WELLING at § 703 (noting that "[w]hen it becomes obvious that sanctions for contempt are not going to compel compliance, they lose their remedial characteristics, and take on more of a punitive nature"). Here, based on the facts as admitted by Ms. Rennaker, the Court would arrive at the same sanction—30 days of incarceration—regardless of the label applied.

§ 2J1.1. Thus the Court turns to the § 3553 factors which include, among other things, the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense to afford adequate deterrence.

Applying these factors, the Court is satisfied that an additional period of incarceration is necessary. Over a period of several months, Ms. Rennaker consistently told the probation officer that she was performing her community service obligations when, in fact, she was not. Ms. Rennaker admitted that this was done willfully. The Court understandably has an interest in making sure its orders are carried out and that Court officers receive truthful responses. Furthermore, those citizens who do interrupt their lives and serve, as summoned, on juries must know that those who fail to participate in this process are not rewarded. And a period of punitive custody also serves as a deterrent to any future prospective juror who contemplates a refusal to serve.

No one wants to see a citizen who was summoned for jury service end up in prison. But the Court sees no alternative on this record. It is the Court's hope that Ms. Rennaker spends this time thinking about ways in which she can improve her own life and that of her children. The Court's suggestions include completing her GED, and undertaking any additional education that would assist her in finding suitable employment; obtaining a driver's license; and making and implementing a concrete plan to find employment. The West Michigan economy has a veritable flood of employment opportunities right now, and there is no reason Ms. Rennaker cannot benefit from this opportunity along with everyone else.

## IV.  CONCLUSION

For all the above reasons, the Court finds that Ms. Rennaker is in Civil and Criminal Contempt of Court.

A separate Order of Commitment will follow.


Dated:      April 16, 2018              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE